UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES H. BRADY,

                              Plaintiff,

              -v-                                    19 Civ. 10142 (PAE)

IGS REALTY CO. L.P. and PHILIPPE IFRAH

                              Defendants.

---

JAMES H. BRADY,

                              Plaintiff,

              -v-                                    19 Civ. 10622 (PAE)

MARK S. FRIEDLANDER, ESQ., *et al.*,                 OPINION & ORDER

                              Defendants.

---

PAUL A. ENGELMAYER, District Judge:

　　In fall 2019, plaintiff James H. Brady, proceeding *pro se*, commenced two related actions

before this Court.  The first, against defendants IGS Realty Co. L.P. ("IGS Realty") and Philippe

Ifrah (collectively, the "IGS Defendants"), brings claims, *inter alia*, of fraud, breach of contract,

negligence, and a conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985.  *See*

*Brady v. IGS Realty*, No. 19 Civ. 10142 ("*IGS Realty II*"), Dkt. 1 ("Compl.") at 40–62.  The

second, against defendants Mark S. Friedlander, Esq., the Law Firm of Mark S. Friedlander,

Kenneth A. McLellan, Esq., Keith R.M. Roussel, Esq., and Winget, Spadafora, Schwartz, LLP

("Winget Spadafora") (collectively, the "Friedlander Defendants"), brings claims, *inter alia*, of a

conspiracy to interfere with civil rights, of violations of various constitutional rights, and legal

malpractice.  *See Brady v. Friedlander*, No. 19 Civ. 10622 ("*Friedlander II*"), Dkt. 1 ("Compl.")

at 59–71.  Each arises from a longstanding real estate conflict between the IGS Defendants and

Brady, and Friedlander's brief legal representation of Brady in connection with that conflict.

Defendants in each case moved to dismiss Brady's claims in their entirety.  Brady then

cross-moved for summary judgment against the IGS Defendants on each claim.  On July 20, 2020,

the Honorable Ona T. Wang, U.S. Magistrate Judge, issued a Report and Recommendation

addressing the claims in both cases.  *IGS Realty II*, Dkt. 30 ("Report").  The Report recommends

that the motions to dismiss be granted, that Brady's cross-motions for summary judgment be denied

as moot, and that a permanent filing injunction should be imposed against Brady.  *See id.* at 30.

Brady has since filed objections to the Report, and the defendants have each filed a response.

For the following reasons, the Court adopts the Report in its entirety.  Brady's claims in

both cases are dismissed.  And, as discussed below, the Court permanently enjoins him from

pursuing further litigation in this District regarding the events addressed in this decision.

## I.      Background[1]

The Court adopts as accurate the statement of facts set out in the Report.  *See* Report

at 2–5.  Nonetheless, because Brady's objections contest the factual underpinnings of the Report,

the Court briefly summarizes the relevant background.

---

[1] As with the Report, the facts are drawn primarily from the Complaints in the two actions.  *See* Report at 2–5.  For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  In addition, the Court considers, to the extent relevant, the publicly available dockets and filings in the prior legal proceedings addressed below, some of which are exhibits to the defendants' motions to dismiss.  It is appropriate to consider these materials in resolving defendants' motion to dismiss based on *res judicata* and the *Rooker-Feldman* doctrine, because courts resolving such claims "routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see MFW Assocs., LLC v. Plausteiner*, No. 15 Civ. 2513 (PAE), 2016 WL 1246564, at *3–4 n.5 (S.D.N.Y. Mar. 24, 2016).

According to his Complaint, Brady was the guarantor on three corporate leases in a building at 336 West 37th Street in New York City (the "IGS Lease Agreements"), which was owned by the IGS Defendants. *IGS Realty II*, Compl. ¶¶ 6–7.  In 2009, IGS Realty filed several actions in New York state court alleging that three corporate tenants owned by Brady had failed to make lease payments on the units at 336 West 37th Street, and commenced a separate breach-of-contract action ("*IGS Realty I*")[2] against Brady, as guarantor of those leases, seeking payment of the rents owed.  *See generally IGS Realty Co., L.P. v. Brady* ("*IGS Realty I*"), Index No. 603561/2009 (N.Y. Sup. Ct. filed Dec. 2, 2019).

In June 2015, Justice Barry R. Ostrager presided over a jury trial on the latter claims, and on Brady's counter-claims for breach of warranty and fraudulent inducement.  *See IGS Realty II*, Dkt. 5-6 ("Trial Tr.") at 437–38.  On June 26, 2015, the jury found for IGS Realty on each claim. *Id.*  It found that Brady had breached his contract to IGS Realty by not paying the rent amounts owed under his guarantees (the "Personal Guarantees"), and that IGS Realty had not "breached the implied warranty that the premises were fit for use in the lease" or "fraudulently induced [Brady] to sign the leases and guarantees." *Id.*  It also rejected Brady's defense to breach that IGS Realty had constructively evicted him through its own breaches of the lease terms. *Id.* at 408–09, 437–38.  The jury awarded IGS Realty $541,758.62. *Id.* at 437.

On Brady's appeal, the First Department affirmed in all respects, and the New York Court of Appeals denied leave to appeal. *IGS Realty Co., L.P. v. Brady*, 149 A.D.3d 524, 524–25

---

[2] Brady's Objections challenge the Report's use of roman numerals to distinguish between the legal actions under discussion.  *See Friedlander II*, Dkt. 62 at 9–10.  Given the substantial overlap between parties and case captions in the underlying state-court actions and subsequent federal filings, the Court follows the Report's sensible approach.  The use of such designations is common practice in decisions that reference multiple judicial proceedings involving overlapping parties.  *See, e.g.*, *Polur v. Raffe*, 912 F.2d 52, 54 (2d Cir. 1990); *Singh v. Parnes*, 199 F. Supp. 2d 152, 157–59 (S.D.N.Y. 2002).

(1st Dep't 2017), *leave to appeal denied*, 31 N.Y.3d 1036 (2018).  On May 31, 2017, the New York State Supreme Court entered final judgment.  *IGS Realty II*, Dkt. 5-7.  On September 5, 2018, that judgment was satisfied through the sale of Brady's cooperative apartment, located at 450 West 31st Street in New York City.  *See IGS Realty II*, Compl. ¶¶ 11–13.

In 2012, while the *IGS Realty I* action was pending, Brady filed a separate action against Friedlander ("*Friedlander I*"), who in 2009 had briefly represented Brady in a separate dispute with IGS Realty.  *See Brady v. Friedlander* ("*Friedlander I*"), Index No. 156825/2012 (N.Y. Sup. Ct. filed Sept. 30, 2012).  In *Friedlander I*, Brady alleged (1) violations of N.Y. Jud. Law § 487; (2) unreasonable legal fees; (3) legal malpractice; (4) misrepresentation of Friedlander's reasons for withdrawal in an earlier dispute; and (5) breach of contract.  *See Friedlander II*, Dkt. 33-4.  Defendant Winget Spadafora represented Friedlander in that action.

On June 7, 2013, Justice Eileen A. Rakower dismissed Brady's § 487 and malpractice claims for failure to state a claim, and his misrepresentation claims on *res judicata* grounds.  *Id.*, Dkt. 33-5 ("Rakower Order") at 5–6.  Justice Rakower declined to dismiss the claims relating to unreasonable fees and Friedlander's alleged breach of contract at that time, but did not pass upon their merits.  *Id.* at 6.  On February 20, 2018, Justice Carmen Victoria St. George, who was reassigned to the case, declined to grant summary judgment on those last two claims.  *Id.*, Dkt. 33-7 ("St. George Order").  However, on July 11, 2019, following additional discovery and further briefing, Justice Alan C. Marin, after yet another reassignment, granted summary judgment to the defendants and entered an order dismissing Brady's remaining claims, citing the reasons given in a brief ruling to that effect from the bench.  *Id.*, Dkt. 33-6 ("Marin Order").  Brady did not appeal the dismissal.

The related actions pending before this Court arise from the *IGS Realty I* and *Friedlander I* litigations. On October 31, 2019, Brady filed the action in 19 Civ. 10142 ("*IGS Realty II*") against the IGS Defendants. *See IGS Realty II*, Compl. On November 15, 2019, Brady filed the action in 19 Civ. 10622 ("*Friedlander II*") against the Friedlander Defendants. *Friedlander II*, Compl. The Court referred both cases to Judge Wang for general pretrial supervision. On November 27, 2019, the IGS Defendants moved to dismiss Brady's claims against them in their entirety. *IGS Realty II*, Dkt. 5. On January 24, 2020, the Friedlander Defendants did the same. *Friedlander II*, Dkts. 31, 33. The Court referred these dispositive motions to Judge Wang. On December 17, 2019, Brady opposed the IGS Defendants' motion and cross-moved for summary judgment, *IGS Realty II*, Dkt. 20, and on February 6, 2020, he opposed each of the Friedlander Defendants' motions, while again adding his own cross-motions for summary judgment. *Friedlander II*, Dkts. 37, 38. Each defendant replied. *See IGS Realty II*, Dkt. 24; *Friedlander II*, Dkts. 42–43. Defendants in both actions also asked that the Court enter a filing injunction against Brady, barring him from commencing additional lawsuits on similar matters.

On July 20, 2020, Judge Wang issued a careful and thorough Report and Recommendation, recommending the dismissal of Brady's claims in both actions with prejudice, the denial of his cross-motions for summary judgment as moot, and the imposition of a filing injunction. *See* Report at 30. On August 7, 2020, the Court received Brady's objections to this report. *See IGS Realty II*, Dkt. 38 ("Objections"). On August 17, 2020, Brady opposed the filing injunction in a separate brief. *Id.*, Dkt. 40 ("Injunction Opp'n"). By August 21, 2020, upon order of the Court, the defendants each filed their responses to Brady's opposition, rendering Brady's objections fully submitted. *Id.*, Dkt. 41; *Friedlander II*, Dkts. 64–65; *see* Fed. R. Civ. P. 72(b)(2).

## II.     Legal Standard

### A.     Report and Recommendation

After a magistrate judge has issued a Report and Recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)).  When a timely and specific objection has been made, the court is obligated to review the contested issues de novo.  *See id.*; *see also* Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).  But when the objections simply reiterate previous arguments or make only conclusory statements, the court should review the Report for clear error.  *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see also Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases).  This is so even in the case of a *pro se* plaintiff.  *Cf. Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).  Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation."  *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

### B.     Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When resolving a motion to

dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable

inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145 (2d Cir. 2012).  That tenet, however,

does not apply to legal conclusions.  *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.

United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Unlike under Rule 12(b)(6), "[a] plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence

that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation

omitted).  Further, the Court may properly refer to matters outside the pleadings when considering

the existence of jurisdiction pursuant to Rule 12(b)(1).  *Id.*

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*,

572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it]

suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation

omitted).  However, *pro se* status "does not exempt a party from compliance with relevant rules

of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  The Court

may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations,

*see Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions

themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

### III.   Discussion

Brady raises various objections to the Report.  As to the claims in *IGS Realty II*, he argues that the Report (1) improperly applies the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel as bases to dismiss his claims, because the validity of the Personal Guarantees was not actually decided below; (2) ignores evidence that the IGS Defendants breached the terms of various lease agreements, thereby voiding the Personal Guarantees; (3) improperly recommends dismissing his other claims as time-barred or for failure to state a claim; and (4) fails to address the "declaratory judgment questions" Brady posed to the Court.

As to the *Friedlander II* claims, Brady makes similar arguments.  He contends that the Report (1) improperly applies the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel because Justice Marin did not resolve his claims on the merits, and because *Friedlander II* does not challenge the state-court decision, but rather alleges a conspiracy among the parties to that proceeding; (2) incorrectly finds several of his claims time-barred; and (3) improperly recommends dismissing his federal claims for failure to state a claim.

Most, it not all, of these objections are either conclusory or reprise arguments already considered and rejected in the Report.  Many of Brady's objections also consist of unjustified, baseless, and personal attacks on Judge Wang and the Report, which the Court disregards. Accordingly, it would be appropriate for the Court to review the Report only for clear error.  *See Acevedo*, 2014 WL 4651904, at *3.  However, in the interest of thoroughness, the Court will review the Report *de novo*.  The Court addresses Brady's objections regarding *IGS Realty II* first.  Then, the Court turns to his objections regarding *Friedlander II*.  Finally, the Court addresses the Report's recommendation that a filing injunction be imposed preventing Brady from attempting to relitigate these claims further.

8

A.     *IGS Realty II*

As the Report correctly recognizes, Brady's claims in *IGS Realty II* fall into two broad groups: (1) claims that challenge the validity of the Personal Guarantees underlying the judgment against Brady in *IGS Realty I* (claims one, two, three, seven, eight and nine); and (2) claims that allege a conspiracy between various judges and lawyers involved in the *IGS Realty I* proceedings (claims four, five, and six). As to the first set of claims, the Court agrees with the Report that Brady's claims are barred by the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel. As to the second set, the Court agrees that such claims are time-barred and, independently, fail to state a claim.

### 1.     Validity of the Personal Guarantees

#### a.     *The* Rooker-Feldman *doctrine*

The *Rooker-Feldman* doctrine reflects "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). *See generally D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). Accordingly, it bars federal district courts from exercising jurisdiction over a suit that is "in fact a collateral attack on a final state court judgment." *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 202 F. Supp. 2d 126, 133 (S.D.N.Y. 2002); *see Gould v. Airway Off., LLC*, No. 15 Civ. 7964 (PAE), 2016 WL 3948102, at *3 (S.D.N.Y. July 19, 2016).

As the Second Circuit has explained, the *Rooker-Feldman* doctrine applies where four requirements are met: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state-court judgment; (3) the plaintiff invites review and rejection of that state-court judgment; and (4) the state-court judgment became final before the district court

proceedings commenced.  *Hoblock*, 422 F.3d at 85.  "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive."  *Id.*

Here, the procedural requirements are met.  First, as is undisputed, the parties to *IGS Realty I* were Brady and IGS Realty, and Brady lost in that action.  *See IGS Realty II*, Dkt. 5-7 ("Judgment"); *Id.*, Trial Tr. at 437–38.  Second, and also undisputed, that action concluded on May 31, 2017, more than two years before Brady commenced this one.  *See id.*, Judgment.  Accordingly, the first and fourth *Rooker-Feldman* requirements are satisfied.  *See Hoblock*, 422 F.3d at 85.

As to the substantive requirements, the second is the "core requirement from which the others derive."  *Id.* at 87.  Here, as the Report concludes, it is satisfied.  Brady's Complaint is explicit that he complains of injuries caused by the state-court judgment:  "Plaintiff was forced to pay IGS Realty $1,705,535.71 based on only Question 1(a) of the June 26, 2015 Jury Interrogatories, which had nothing to do whatsoever with whether the Personal Guarantees were enforceable."  *IGS Realty II*, Compl. ¶ 13.  As a result, he and his wife "had their lives destroyed when they were forced to sell their commercial Manhattan apartment, where they both worked at and ran as an event space, to pay $1,705,535.71 to IGS Realty without there ever being a 'Judgment' that the Personal Guarantees were enforceable."  *Id.* ¶ 11.  Thus, Brady's primary contention, in his federal Complaint (and in his later Objections), is that *IGS Realty I* incorrectly ruled in favor of the IGS Defendants, that he has been injured by this state-court decision, and that "[t]his fact needs to be adjudicated in the District Court."  *Id.* ¶ 17; *see* Objections at 12.  Insofar as Brady complains of injuries caused by the New York State Supreme Court's judgment in *IGS Realty I*, the second *Rooker-Feldman* requirement squarely applies.  *See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 348–49 (E.D.N.Y. 2010) (finding

10

*Rooker-Feldman* bar applied where plaintiffs "alleg[ed] injuries that occurred as a result of the judgment" including alleging "that defendants won judgment without stating a prima facie case").

As to the third and final requirement, granting Brady the relief he seeks in this case would require the Court to "review the state-court decision." *Hoblock*, 422 F.3d at 84 (quoting *Feldman*, 460 U.S. at 483–84 n.16). Brady's federal Complaint expressly calls for this Court to correct the outcome of the state proceedings, at least as to the Personal Guarantees, stating: "This fact needs to be adjudicated in the District Court." *IGS Realty II*, Compl. ¶ 17. In support of his claim that the Personal Guarantees became unenforceable, Brady reviews the litany of ways that, he alleges, the IGS Defendants breached the leases, thereby relieving him of his obligations to pay rent pursuant to them. *See* Objections at 15–20. However, as Brady repeatedly confirms, each of these alleged breaches was presented to the state-court jury in the context of his unsuccessful defense that he had been constructively evicted. *See, e.g.*, *id.* at 15, 18; *see also* Trial Tr. at 407–08 (instructing jury that: "In determining whether Mr. Brady breached his guarantee for the leases by not paying the full rent, you must consider whether Mr. Brady was constructively evicted from the premises pursuant to the instructions that I will give you."). Also litigated in the state-court trial was his claim of fraudulent inducement, which he reprises here. *Compare id.* at 411–12 (instructing jury on fraudulent-inducement counter-claim), *with id.*, Compl. ¶¶ 136–161. The jury, however, necessarily rejected these defenses and counter-claims in ruling for IGS Realty, in finding Brady liable under the Personal Guarantees, and in rejecting his defense that his failures to pay were excused by breaches or fraud by IGS Realty. *See* Trial Tr. at 404–10, 438–39. Accordingly, Brady's claims unavoidably ask this Court to do what the *Rooker-Feldman* doctrine forbids: review and reverse the state-court decision below.

In an attempt to avoid the *Rooker-Feldman* bar, Brady argues that his injuries do not arise from the state-court judgment because there is no state-court document that specifies, *verbatim*, that the Personal Guarantees were enforceable.  Thus, he contends, he is not complaining of a state-court *judgment*, but of the absence of one.  *See, e.g.*, Objections at 14 ("As detailed further below, *res judicata*, collateral estoppel, and the Rooker-Feldman Doctrine cannot apply to any of Plaintiff's claims as there is no relitigation of something that was never adjudicated.").  The state-court record, however, refutes that account.  As Justice Ostrager instructed the jury at trial:

> [IGS Realty] claims that the contracts it had with the lessees that were guaranteed by Mr. Brady required that Mr. Brady pay the unpaid rents due through October 1, 2009, and that Mr. Brady breached the contracts by not paying the rent in full.  Mr. Brady claims that he was relieved of any obligation to pay rent because he was constructively evicted from the premises.

> [IGS Realty] has the burden of proving by a preponderance of the evidence that [IGS Realty] had a contract with Mr. Brady for the payment of rent, that [IGS Realty] did what it was required to do under the contract[,] [t]hat Mr. Brady breached the contract by not doing what he was required to do under the contract, and that [IGS Realty] sustained damages because of Mr. Brady's breach.

> In determining whether Mr. Brady breached his guarantee for the lease by not paying the full rent, you must consider whether Mr. Brady was constructively evicted from the premises pursuant to the instructions that I will give you.

*IGS Realty I*, Trial Tr. at 407–08; *see also id.* at 404–05 (discussing Brady's defenses and counterclaims regarding his liability under the Personal Guarantees).  It could not be clearer that, to prevail against Brady—which it did—IGS Realty had to convince the jury that Brady was liable under the Personal Guarantees.  Brady's argument to the contrary—depicting the jury as having adjudicated only whether "a tenant corporation was guilty of having an illegal floorplan"—airbrushes away this vital dimension of the state-court trial.  Objections at 24.

Nor can Brady escape the *Rooker-Feldman* bar by claiming that IGS Realty obtained the state-court judgment by fraud.  The Second Circuit has "indicated that it would be unwilling to

recognize a fraud exception to *Rooker-Feldman*."  *Roberts v. Perez*, No. 13 Civ. 5612 (JMF),
2014 WL 3883418, at *4 (S.D.N.Y. Aug. 7, 2014).  Accordingly, the *Rooker-Feldman* doctrine
bars Brady's claims regarding the enforceability of the Personal Guarantees.  It requires the
dismissal of counts one, two, three, seven, eight, and nine in his Complaint.

> *b.*   Res judicata *and collateral estoppel*

The doctrines of *res judicata* and collateral estoppel are to similar effect here.  "[F]ederal
courts must give state-court judgments the same preclusive effect as they would receive in courts
of the same state."  *Burkbile v. Bd of Educ. Hastings-on-Hudson Union Free Sch. Dist.*,
411 F.3d 306, 310 (2d Cir. 2004); *see* 28 U.S.C. § 1738.  Because New York courts adjudicated
the judgment below, New York preclusion law governs this case.  *Colon v. Coughlin*,
58 F.3d 865, 869 n.2 (2d Cir. 1995).

As to *res judicata*, the following three conditions are required: that "(1) the previous
action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or
those in privity with them; and (3) the claims asserted in the subsequent action were, or could
have been, raised in the prior action."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499
(2d Cir. 2014) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.2d 275, 285 (2d Cir. 2000)).  In
carrying out this analysis, New York courts take a "transactional approach."  *Yeiser v. GMAC
Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008).  "[O]nce a claim is brought to a final
conclusion, all other claims arising out of the same transaction or series of transactions are barred,
even if based upon different theories or if seeking a different remedy."  *Giannone v. York Tape
& Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (quoting *In re Derek Josey*, 9 N.Y.3d 386, 389–90
(2007).  "Even if there are variations in the facts alleged or different relief is sought, if the
actions are grounded on the same gravamen of the wrong *res judicata* applies."  *Yeiser*,
535 F. Supp. 2d at 422.

Each *res judicata* condition is present here.  As discussed above, *IGS Realty I* was decided on the merits, by a jury.  *See* Trial Tr. at 407–10, 437–38; *see also Robinson v. Allstate*, 706 F. Supp. 2d 320, 324 (W.D.N.Y. 2010) (a jury verdict is a final judgment on the merits for *res judicata* purposes), *aff'd*, 508 F. App'x 7 (2d Cir. 2013).  And, although their roles as plaintiff and defendant are now reversed, both Brady and IGS Realty were parties to the prior action.

As to the third condition, all claims that Brady now brings regarding the validity of the Personal Guarantees were, or could have been, asserted in the prior action.  *See, e.g.*, *IGS Realty I*, Trial Tr. at 407 ("Further, Mr. Brady may contest this liability under the guarantee.").  It is beyond cavil that the allegations at issue in the instant action arise "out of the same transaction or series of transactions" as did the *IGS Realty I* litigation.  *Giannone*, 548 F.3d at 194.  Many, in fact, are identical.  *Compare, e.g.*, *IGS Realty I*, Trial Tr. at 404–405, 410–15, *with IGS Realty II*, Compl. ¶¶ 215–219, 208–214.  Brady's only response is to state that he "is not relitigating what happened at [the] 2015 trial," but merely "using what happened at the 2015 trial as evidence of a civil conspiracy which occurred on June 23, 2015 immediately after" he refused a settlement offer.  Objections at 36.  But it is well established that a losing party "may not relitigate these issues by recasting their assertions as the basis for a . . . conspiracy claim."  *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 114 (S.D.N.Y. 1996); *see Holmes v. State of N.Y. Off. of Ct. Admin.*, No. 00 Civ. 7871 (LAP) (AJP), 2001 WL 5035, at *2 n.2 (S.D.N.Y. Jan. 2, 2001) (collecting cases); *see also Wallis v. Fifth Third Bank*, 443 F. App'x 202, 205 (7th Cir. 2011) ("[The plaintiff] cannot circumvent the *Rooker-Feldman* doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations.").

14

The doctrine of collateral estoppel further bars Brady's claims.  While narrower than *res judicata*, that doctrine requires that "when an issue of ultimate fact had once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (citation omitted).  Under New York law, the doctrine of collateral estoppel applies only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  *Abdelal v. Kelly*, 726 F. App'x 8, 10 (2d Cir. 2018) (emphasis omitted) (quoting *Colon*, 58 F.3d at 869).  As discussed above, Brady's contentions in the instant action were actually and necessarily decided in the *IGS Realty I* action.  *See* Trial Tr. at 407–10, 437–38.  And Brady—notwithstanding his theory today that the verdict against him resulted from a conspiracy, *see, e.g.*, *Green*, 936 F. Supp. at 114—had a full and fair opportunity to litigate the issues before the New York state courts.

### 2.     The Remaining *IGS Realty II* Claims

Brady's remaining claims also must be dismissed.  Even construing all well-pled facts in the light most favorable to Brady, *Koch*, 699 F.3d at 145, and with the special solicitude owed to *pro se* parties, *see Harris*, 572 F.3d at 72, the allegations in the *IGS Realty II* Complaint fail to state a claim to relief that "is plausible on its face," *Iqbal*, 556 U.S. at 678.

As to his fourth claim for relief, Brady alleges "fraud in the inducement to surrender the [IGS] leases."  *IGS Realty II*, Compl. ¶¶ 184–198.  The factual basis for this claim appears to be both that the IGS Defendants, in 2009, fraudulently persuaded (1) Friedlander to withdraw from representing Brady; and (2) Brady, once without counsel, to surrender certain leases.  *Id.*  In support of the latter, Brady claims that in October 2009, Ifrah misrepresented a court ruling to exert pressure on Brady.  *Id.* ¶¶ 192–196.

This claim fails for two independent reasons.  First, it is time-barred:  Under New York law, a claim for fraudulent inducement must be brought within six years of the commission of the fraud or two years from its discovery, whichever is longer.  *See Huang v. Siam Com. Bank Pub. Co. Ltd.*, 247 F. App'x 299, 301 (2d Cir. 2007).  Brady has made no representation that he only recently discovered the fraud, which he alleges occurred in 2009.  *See IGS Realty II*, Compl. ¶ 192.  His window to pursue this claim thus closed in 2015.  Brady's only response is that this claim was filed in 2012 and has "continued without interruption from that time until [Brady] moved the case to District Court in 2020 to add his 1983 and 1985 claims."  Objections at 55.  But this federal case was filed in 2019.  Notwithstanding its factual overlap, it is distinct from the earlier state-court action.  And, to the extent that Brady's claims here were resolved in the earlier state-court action, as his "continuation" theory appears to concede, these are likely further precluded by *Rooker-Feldman*, *res judicata*, and/or collateral estoppel.  Second, as the Report correctly concludes, Brady has not pled this claim with the "particularity" required by Federal Rule of Civil Procedure 9(b).  *See* Report at 15–16.  His conclusory allegation that Ifrah's "claims were false" is insufficient to plead a "material false representation," fraudulent intent, or reliance, as required by New York law.  *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006); *see also Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) (allegation that a document "contain[ed] numerous false statements and instances of perjury" represents "the kind of conclusory allegations that Rule 9(b) is meant to dissuade.").

Brady's fifth claim—for tortious interference with a contract—fails for similar reasons.  First, it too is time barred.  It arises from the same 2009 events described in connection with the fraudulent inducement claims, *see IGS Realty II*, Compl. ¶¶ 200–202, and under New York law "claims for tortious interference with contract . . . are governed by a three-year statute of

limitations." *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 742 (E.D.N.Y. 2015).
Second, for the reasons stated in the Report, Brady's conclusory allegation that certain
deposition testimony "proves Defendant tortuously interfered with the contract," without
specifying what contract he is referring to, the alleged breach, or damages, fails to state a
plausible claim for relief. *See* Report at 16–17.

Brady's sixth claim, under 42 U.S.C. § 1985(2), enacted as part of the Ku Klux Klan Act,
must also be dismissed. Section 1985(2) provides a cause of action where "two or more persons
conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the
due course of justice in any State or Territory, with intent to deny to any citizen the equal
protection of the laws." 42 U.S.C. § 1985(2); *see Keating v. Carey*, 706 F.2d 377, 389
(2d Cir. 1983) (Meskill, J., concurring in part and dissenting in part). It thus requires a "showing
of a conspiracy motivated by discriminatory animus." *Harrell v. N.Y. State Dep't of Corr.*,
No. 15 Civ. 7065 (RA), 2019 WL 3821229, at *13 (S.D.N.Y. Aug. 14, 2019).

As the Report correctly concludes, Brady's complaint alleges none of this. *See* Report
at 17–18. His sixth cause of action merely restates the elements of a § 1985(2) claim. *See IGS
Realty II*, Compl. ¶¶ 204–205. To be sure, Brady's Complaint vaguely refers to a conspiracy
between Justice Ostrager, the IGS Defendants, and their counsel to sabotage Brady during the
litigation of *IGS Realty I*. Brady's Objections further assert that the fact that the First
Department "sat silent" during a 2018 oral argument, standing alone, supports finding that those
judges, too, participated in the alleged conspiracy to rule in favor of the IGS Defendants and
deprive Brady of his rights, *see* Objections at 24–26. But Brady does not cite any facts, other
than that he was the victim of alleged legal errors and adverse rulings, to support the inference

that a conspiracy against him existed.  These scant allegations do not give rise to a plausible allegation of a conspiracy—much less one motivated by discriminatory animus.

Brady's sixth claim for relief glancingly mentions 42 U.S.C. § 1983, but it also fails to allege a violation of that statute, which requires that a defendant sued thereunder be either a state actor or a private party acting "under color of state law."  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).  Brady does not contend that either IGS Realty or Ifrah are state actors.  And, for the reasons reviewed above, his Complaint does not plausibly allege a conspiracy between IGS Realty, Ifrah, and any judges or justices of the New York State courts, in which these private parties "acted in concert with [a] state actor to commit an unconstitutional act."  *Id.* (citation omitted).  Therefore, Brady's claims under §§ 1983 and 1985 must also be dismissed.

### 3.    The Declaratory Judgment Act

In his Objections, Brady faults the Report for failing to address the six "declaratory judgment questions" posed by Brady in his Complaint, each of which concerns the validity of the Personal Guarantees and the state-court proceedings surrounding them.  *See, e.g.*, Objections at 3, 10–11; *IGS Realty II*, Compl. ¶¶ 127–135.  Brady has subsequently filed various letters demanding that the Court answer these questions, or some subset thereof, in resolving this dispute.  *See, e.g.*, *id.*, Dkts. 35, 43.  But the Declaratory Judgment Act, *see* 28 U.S.C. § 2201, does not create an "independent cause of action," *see In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  Rather, "[i]ts operation is procedural only—to provide a form of relief previously unavailable."  *Id.* (citation omitted).  Such procedural authorization "does not extend to the declaration of rights that do not exist under law."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).  In other words, a party may not obtain relief based on the Declaratory Judgment Act standing alone—one can only obtain relief "based on other laws that

the defendant allegedly violated." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 247 F.R.D. 420, 422–23 (S.D.N.Y. 2007). Because the Court dismisses each of Brady's claims, and finds that his Complaint does not raise any other colorable claim for relief, he "has no independent substantive claim" against the defendants that could entitle him to declaratory relief. *Johnson v. Magnolia Pictures LLC*, No. 18 Civ. 9337 (VB), 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (citation omitted). Therefore, "the cause of action for declaratory relief is appropriately dismissed" as well, and the Report is correct not to address those claims. *Id.* (citation omitted); *see also Araujo v. Macaire*, No. 16 Civ. 9934 (PAE) (KNF), 2020 WL 1816189, at *6–8 (S.D.N.Y. Apr. 10, 2020).

### B. *Friedlander II*

The Court next turns to *Friedlander II*. Like the claims in *IGS Realty II*, the claims in *Friedlander II* can be grouped into two categories. The first (claims three, four, five, seven, and eight) relate to Friedlander's alleged actions during earlier litigation against IGS Realty, which were the subject of the *Friedlander I* litigation. The second (claims one, two, six, and nine) allege that the Friedlander Defendants conspired with Justice Marin against Brady in the *Friedlander I* litigation. The Court agrees with the Report that all claims must be dismissed.

#### 1. Subject-Matter Jurisdiction

Like the Report, the Court first addresses its subject-matter jurisdiction over these claims. *See* Report at 21–22; *see also Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 619 (2d Cir. 2019) ("[A] district court may not proceed to the merits without first determining whether it has subject-matter jurisdiction."). "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). "For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." *Linardos v. Fortuna*,

19

157 F.3d 945, 948 (2d Cir. 1998).  A limited liability partnership has the citizenship of each of its general and limited partners for the purposes of diversity jurisdiction.  *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

The *Friedlander II* Complaint does not adequately plead diversity jurisdiction.  Brady is a citizen of New Jersey.  But his Complaint alleges insufficient information to determine the citizenship of any of the defendants in this action.  He only provides business addresses for each individual, and has not provided the citizenship of the members of Winget Spadafora, a limited liability partnership.  *Friedlander II*, Compl. ¶¶ 8–11; *see Monitronics*, 2012 WL 967623, at *1. If any of these defendants or any partners of Winget Spadafora were also citizens of New Jersey, the Court would lack diversity jurisdiction over the state-law claims in this action.  *See Owen*, 437 U.S. at 373; *Carden*, 494 U.S. at 195–96.  Therefore, Brady has not met his burden of adequately pleading diversity jurisdiction.  *See Aurecchione*, 426 F.3d at 638.  And the Court cannot proceed to adjudicate his state-law claims on that basis.

Brady's Complaint does, however, plead two federal causes of action, as to which there is federal question jurisdiction under 28 U.S.C. § 1331.  *See Friedlander II*, Compl. ¶¶ 156–160. And, pursuant to 28 U.S.C. § 1367, the Court may, in its discretion, exercise supplemental jurisdiction over state-law claims if they share a "common nucleus of operative facts" with the federal claims.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997); *see* 28 U.S.C. § 1367(a).  It is true that, ordinarily, where, as here, "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988) (citation omitted); *see* 28 U.S.C. § 1367(c)(3).  However, the decision whether to exercise

supplemental jurisdiction is within the discretion of the Court.  28 U.S.C. § 1367(a); *Carnegie-*

*Mellon*, 484 U.S. at 349–50.  And here, given the close relationship between the state-law claims

in *Friedlander II* to those in *IGS Realty II*, there is good cause and obvious efficiency for the

Court to exercise supplemental jurisdiction so as enable a review of the adequacy of Brady's

pleading of these claims, rather than dismissing them without prejudice for lack of jurisdiction.

The Court therefore exercises supplemental jurisdiction over these claims.

### 2.   Friedlander's Prior Representation of Brady

The Report correctly concludes that the bulk of the *Friedlander II* claims, like most of

those in *IGS Realty II*, are barred by the *Rooker-Feldman* doctrine and *res judicata*.  Specifically,

Brady's third (breach of contract); fourth (unreasonable legal fees); fifth (legal malpractice);

seventh (gross negligence); eighth (negligent misrepresentation); and ninth (breach of fiduciary

duty) causes of action, each of which concerns the same 2009 conduct as the *Friedlander I*

claims, are essentially identical to those considered and rejected in *Friedlander I*.  Accordingly,

those must be dismissed.

The *Rooker-Feldman* procedural requirements—that Brady lost in state court and that the

state-court judgment be rendered final before the commencement of the federal action—are

plainly met.  *See Hoblock*, 422 F.3d at 85.  Brady's claims were each dismissed in *Friedlander I*,

some by Justice Rakower and the rest by Justice Marin.  *See Friedlander*, Compl. ¶ 12

(*Friedlander I* "was unlawfully dismissed by [Justice] Alan C. Marin"); *see also* Rakower Order

at 5–6.  Justice Marin's final dismissal was entered on July 12, 2019, several months before

Brady commenced the *Friedlander II* litigation on November 15, 2019.  Brady did not appeal

from that order.

The substantive requirements are also satisfied.  The *Friedlander II* Complaint directly challenges the outcome of a state-court proceeding.  It alleges that *Friedlander I* "was unlawfully dismissed by Justice Alan C. Marin," and that this dismissal was the product of a conspiracy between the defendants and Justice Marin.  *Friedlander II*, Compl. ¶¶ 12–20.  And, as Brady admits in his Objections, "[t]his is a continuation of the conduct Plaintiff has suffered in state court that certainly gives him a right to a remedy in District Court."  Objections at 43.  Because this Court could not grant Brady the relief he seeks without reviewing and reversing various decisions of the New York State Supreme Court, Brady's claims challenging the dismissal in *Friedlander I* must be dismissed.

Brady argues that he cannot be considered a "state-court loser" because of alleged defects in Justice Marin's ruling.  *See* Objections at 41–45.  But entertaining this argument would itself require this Court to review the state-court decision below, which the *Rooker-Feldman* doctrine prohibits.  The Court therefore lacks subject-matter jurisdiction to undertake the review of Justice Marin's order that Brady requests.  To the extent that Brady again attempts to recast his disagreement with the state-court rulings below as a conspiracy claim, *see, e.g.*, Objections at 44–45, such recharacterizations, again, are insufficient to overcome the *Rooker-Feldman* bar.  *See, e.g.*, *Green*, 936 F. Supp. at 114; *see also Roberts*, 2014 WL 3883418, at *4.  Accordingly, claims three, four, five, seven, eight, and nine in the *Friedlander II* Complaint must be dismissed.

Dismissal of these claims is independently required by the doctrine of *res judicata*.  The *Friedlander I* action ended with an adjudication on the merits.  *See* Marin Order at 1 (granting summary judgment and dismissing claims); *Friedlander I*, Dkt. 222 ("SJ Tr.") at 4–6, 15–17 (discussing lack of evidence for claims); *see also Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y.2d 737, 738 (1983) ("grant of summary judgment for insufficiency of proof" in malpractice

claim suffices to show dismissal on the merits).  Further, Brady was a party to the prior action

and, as discussed, either raised or could have raised each of the instant claims there.  *See Yeiser*,

535 F. Supp. 2d at 422 (discussing New York's "transactional approach" to *res judicata*).

In his Objections, Brady argues that the state-court decision was not "on the merits,"

either because, years earlier, Friedlander had been denied summary judgment on these claims or

because Justice Marin's decision contained insufficient reasoning.  *See* Objections at 54–55.

These arguments are meritless.  First, that a grant of summary judgment to Brady's adversary

was inappropriate at an earlier stage of the *Friedlander I* action does not mean that the grant of

summary judgment in that action, after fuller discovery revealed the lack of evidentiary support

for Brady's claims, was other than merits based.  *See Friedlander I*, SJ Tr. at 4–6, 9 (discussing

additional discovery and expert report).  Second, there is no requirement in New York law that a

ruling specifically state that it was "on the merits" or be "so ordered."  Determining the *res*

*judicata* effect of a prior decision instead "requires examination of what was intended by the first

decision and what the logical consequences of that decision are."  *EFCO Corp. v. U.W. Marx,*

*Inc.*, 124 F.3d 394, 398 (2d Cir. 1997) (citation omitted).  A review of the proceedings in

*Friedlander I*, as the Report explains, establishes that the dismissal here so qualifies.

### 3.      The Remaining *Friedlander II* Claims

The Court turns to Brady's remaining claims against the Friedlander Defendants.  First,

he brings §§ 1983 and 1985(2) claims in this action that are similarly vague to those he brought

against the IGS Defendants.  Here, Brady contends that his loss in the *Friedlander I* proceedings

resulted from a conspiracy between Friedlander, Winget Spadafora, and Justice Marin.  Second,

he alleges a state-law conspiracy claim based on the same facts.  Third, he alleges a fraud in the

inducement claim against Friedlander.

The Court dismisses the federal claims under §§ 1983 and 1985 (count two) for the same reasons it dismissed the federal claims in *IGS Realty II*.  Brady does not plead any facts that plausibly support the existence of a conspiracy between the Friedlander Defendants and Justice Marin.  Brady cites as support only the fact that Justice Marin ruled against him in a curt fashion. These claims are also likely barred by the *Rooker-Feldman* doctrine, as the conspiracy he alleges is simply "an agreement between the Winget Spadafora Attorneys, Mark Friedlander, and [Justice] Marin to get rid of this case."  Objections at 45; *see, e.g.*, *Green*, 936 F. Supp. at 114.

Second, as to Brady's civil conspiracy claim (count one), the Report correctly notes that New York law does not provide an independent cause of action for civil conspiracy.  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("New York does not recognize an independent tort of conspiracy." (citing *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) (mem.))).  This claim must also be dismissed.

The Court also dismisses Brady's claim for fraud in the inducement (count six).  This claim alleges that Friedlander fraudulently induced Brady to spend more than $100,000 to litigate the case against a landlord (presumably IGS Realty), while engaging in a "secret relationship" with opposing counsel and later withdrawing from the action under false pretenses. *See Friedlander II*, Compl. ¶¶ 190–195.  As the Report correctly concludes, like Brady's fraudulent inducement claim in *IGS Realty II*, this one too is time-barred by New York's six-year statute of limitations.  *Huang*, 247 F. App'x at 301.  The conduct complained of occurred in 2009, and Brady's time to file therefore expired in 2015.  This claim also appears largely duplicative of the claims against Friedlander in *Friedlander I*, and fails to plead any material false statement with particularity.  *See* Report at 25.

IV.     **Leave to Replead**

*Pro se* complaints should generally be given leave to amend when there is "any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *see also Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013). But a district court has discretion to deny leave if a revised claim still "could not withstand a motion to dismiss." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). If the problems with a claim are "substantive," rather than the result of an "inadequately or inartfully pleaded" complaint, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000).

Because many of Brady's claims in each action are barred by the *Rooker-Feldman* doctrine, *res judicata*, or collateral estoppel (or some combination thereof), "better pleading will not cure" their defects, and granting leave to amend would be futile. *Id.*; *see also Brown v. City of New York*, No. 14 Civ. 2668 (PAE), 2014 WL 5394962, at *9 (S.D.N.Y. Oct. 23, 2014) (denying leave to replead claims barred by *res judicata*). The same is true of the claims that the Court has found time-barred. *Esposito v. Chestnut*, No. 18 Civ. 11245 (PGG), 2020 WL 4586308, at *4 (S.D.N.Y. Aug. 10, 2020) (collecting cases).

Some claims, however, arguably fall into neither category, to wit, Brady's federal claims under §§ 1983 and 1985(2) in each action. Nonetheless, in accord with the Report, the Court's judgment is that granting leave to amend as to these claims would also be futile. Neither Brady's Complaints, briefs, nor Objections suggest the existence of any facts that, if pled, would make plausible his conspiracy theory, *i.e.*, that the defendants engaged in a years-long, far-reaching scheme with lawyers and members of the New York State judiciary, with the aim of sabotaging his legal proceedings. "In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *In re WorldCom, Inc.*

*Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004); *see also, e.g.*, *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir .2009) (summary order) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."). Accordingly, leave to amend would be futile, and will not be given. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

## V.   Filing Injunction

Finally, the Court considers the Report's recommendation that the Court impose a filing injunction against Brady. The Report suggests issuing an injunction barring Brady's further litigation of claims relating to "the IGS Lease Agreements and Brady's businesses' occupation of space in IGS-owned buildings, including any actions concerning the conduct of any attorney, judicial officer, government official, or other third party in relation to the IGS Lease Agreements, or any collateral actions" arising therefrom. *See* Report at 26–27. Upon *de novo* review, the Court overrules Brady's objections and adopts the Report's recommendation.

The issuance of an injunction barring a plaintiff from filing suit is "a serious matter, for access to the courts is one of the cherished freedoms of our system of government." *Raffe v. Doe*, 619 F. Supp. 891, 898 (S.D.N.Y. 1985) (citation omitted). But in exceptional circumstances, a court may, in its discretion, enjoin a litigant from "further vexatious litigation." *Safir v. U.S. Lines*, 792 F.2d 19, 23–24 (2d Cir. 1986) (collecting cases); *see also* 28 U.S.C. § 1651.

To determine whether such exceptional circumstances exist, courts in the Second Circuit consider the following five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir*, 792 F.2d at 24.

The first factor weighs heavily in favor of a filing injunction. Brady is already subject to one filing injunction in this District, imposed by Judge Daniels in 2017 for conduct similar to that here. *See* Report at 2–3. Judge Daniels's decision focused on Brady's having filed a series of collateral attacks on adverse state-court decisions in which he, like here, "impugn[ed] the motivations and integrity of all the actors involved." *See Brady v. Goldman*, No. 16 Civ. 2287 (GBD), 2017 WL 496083, at *2 (S.D.N.Y. Feb. 3, 2017), *aff'd*, 714 F. App'x 63 (2d Cir. 2018). More recently, in 2019, Brady filed a separate action in this District against Justice Ostrager, claiming violations of his constitutional rights during the *IGS Realty I* proceedings. *See Brady v. Ostrager*, No. 19 Civ. 7122 (LGS), Dkt. 6 (S.D.N.Y. Aug. 20, 2019). Judge Schofield dismissed that action as barred by both judicial immunity and the *Rooker-Feldman* doctrine, and noted that "[Brady] is warned that further vexatious or frivolous litigation in this Court will result in an order barring [Brady] from filing any new action in this Court without prior permission." *Id.* at 5–6.

Brady has also previously been sanctioned in state court for "dragging more than twenty parties into court to litigate matters that have already been determined" and asserting claims that "lack any substance." Report at 3 (quoting *Brady v. 450 W. 31st St. Owners Corp.*, Index No. 157779/2013 (N.Y. Sup. Ct. July 15, 2014). In imposing those sanctions, Justice Shirley W. Kornreich found that those actions were "a near perfect example of frivolous conduct." *Id.* Brady has also been barred by the New York courts from "initiating any further litigation as party plaintiff without prior approval of the Administrative Judge of the court in which he seeks to bring a further motion or commence an action." *Goldman*, 2017 WL 496083, at *2 n.2. These related actions therefore represent the latest chapters in a long line of vexatious, harassing, and duplicative lawsuits.

Second, while Brady asserts a subjective belief that he is entitled to relief, *see* Injunction Opp'n at 9–10, this factor requires an *objective* assessment of the plaintiff's legitimate expectations of prevailing. *Safir*, 792 F.2d at 24. As the Report catalogues, Brady has, during the last several years, filed scores of meritless actions in state and federal court. Report at 32 (listing seven cases in this District since 2015); *id.* at 3 (identifying other state-court actions). These actions all appear to have been unsuccessful, and many have been dismissed as frivolous. Brady "has [therefore] amply demonstrated that neither the lack of success of his actions nor the warnings of the district court will cause him to cease his abuse of the judicial process." *Malley v. N.Y.C. Bd. of Educ.*, 112 F.3d 69, 69 (2d Cir. 1997). His "abuse of the judicial process, despite his subjective conviction that he has suffered an unremedied injury, cannot be countenanced." *Safir*, 792 F.2d at 25.

Third, although Brady is now proceeding *pro se*, this is likely "in no small part because a lawyer would likely be subject to discipline for bringing such frivolous litigation." *See Brady v. Goldman*, No. 16 Civ. 2287 (GBD) (SN), 2016 WL 8201788, at *10 (S.D.N.Y. Dec. 5, 2016), *report and recommendation adopted*, 2017 WL 111749, at *1 (S.D.N.Y. Jan. 11, 2017). This factor therefore does not weigh against granting a filing injunction.

Fourth, Brady's litigation has strained the resources of the federal and New York state judiciaries, and imposed needless expense on all parties involved. *Id.* at *9 (collecting state and federal cases); Report at 32 (collecting federal cases). The sheer volume of the lawsuits Brady has brought and pursued has drawn upon the resources of the courts, as well as the parties and lawyers who have been compelled to continually relitigate since 2009 the issues involving Brady's dealings with IGS Realty. Moreover, throughout this action in particular, Brady has frequently submitted accusatory, demanding, and hostile filings—sometimes in violation of the

Court's rules.  These have impugned the good faith, fairness, and professionalism of all involved, and required additional and unnecessary attention by the Court and parties in response.  *See, e.g.*, *IGS Realty I*, Dkt. 28 (describing the Report as "abusive"), Objections at 41 (accusing Judge Wang of being "as dishonest as the defendants"), and Dkt. 45 (accusing the Court of "aiding and abetting in [a] felony").

Finally, as Judge Daniels recognized, there is "strong evidence that other sanctions, including monetary penalties, would not be sufficient to deter further litigation from Brady, who has been sanctioned twice by New York state courts, including an imposition of more than $400,000 of attorneys' fees sanctions."  *Goldman*, 2017 WL 496083, at *2 (citation omitted). This Court, regretfully, agrees with Judge Daniels and the New York state courts that an injunction is the only remedy sufficient to deter continued vexatious litigation.

Considering the above factors together, and fully recognizing the serious consequences of imposing a filing injunction, the Court concludes that one is warranted here.  Accordingly, Brady is hereby enjoined against filing new actions in the Southern District of New York that relate in any way to the IGS Lease Agreements, the Personal Guarantees associated therewith, and Brady's businesses' occupation of space in IGS-owned buildings, including any actions concerning the conduct of any attorney, judicial officer, government official, or other third party in relation to the IGS Lease Agreements, or any collateral actions arising from those agreements.

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts in full Magistrate Judge Wang's July 20, 2020 Report and Recommendation.  The Court dismisses Brady's claims, and does so with prejudice as to those claims over which it has subject-matter jurisdiction, and without prejudice as to all other claims.  The Court also denies Brady's cross-motions for summary judgment as moot.  Finally, the Court enters the above filing injunction.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 5 and 21 in 19 Civ. 10142 and at dockets 31 and 33 in 19 Civ. 10622 and close this case.

The Clerk of Court is respectfully directed to mail a copy of this decision to Brady.


SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: September 3, 2020
New York, New York

30